**UNITED STATES of America,
Appellant,**

v.

**Carmine FATICO, and Daniel
Fatico, Appellees.**

**No. 758, Docket 78–1003.**

United States Court of Appeals,
Second Circuit.

Argued March 29, 1978.

Decided June 12, 1978.

**708**

Lawrence H. Sharf, New York City (David G. Trager, U. S. Atty. for the Eastern District of New York, Thomas P. Puccio, Department of Justice Organized Crime Strike Force, Eastern District of New York, Brooklyn, N. Y., of counsel), for appellant.

Roy M. Cohn, New York City (Michael Rosen, Saxe, Bacon & Bolan, P. C., New York City, of counsel), for appellees.

Before FEINBERG, MANSFIELD and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This is an unusual interlocutory appeal by the United States from a unique order excluding evidence sought to be introduced at a sentencing hearing. The evidence, which revealed that the convicted defendants were connected to organized crime, was to be presented principally by an FBI agent's testimony. The offer was made that he would testify that a reliable but confidential informant who is a member of the Carlo Gambino crime family told the agent that the defendants are members of that family. The testimony was excluded by the United States District Court for the Eastern District of New York, Jack B. Weinstein, *Judge,* as hearsay involving Due Process and Confrontation Clause limitations. *United States v. Fatico,* 441 F.Supp. 1285 (E.D.N.Y.1977). Our jurisdiction is invoked under 18 U.S.C. § 3731. We reverse, holding that the case is appealable and that neither the Confrontation nor the Due

Process Clause is violated by use in sentencing of information supplied by an unidentified informant where there is good cause for not disclosing his identity, and the information he furnishes is subject to corroboration by other means.

## I.  FACTS

Carmine and Daniel Fatico were indicted in connection with a series of truck hijackings. After a mistrial was declared due to a jury deadlock,[1] they pleaded guilty to and were convicted of one count of conspiracy to possess a quantity of furs stolen from a foreign shipment.[2] They face maximum sentences of five years' imprisonment and $10,000 fines. 18 U.S.C. § 371. Prior to sentencing, defendants objected to statements in the presentence reports identifying them as "made" members of the Gambino organized crime family and important figures in the upper echelon of organized crime activity. The Government then offered to support its allegations at a sentencing hearing by the testimony of the former head of the FBI's Organized Crime section in the New York office, based upon information furnished to him by a reliable confidential informant, allegedly a member of the Gambino Family. The Government objected to disclosure of the confidential source for the obvious reasons that both his life and usefulness as an informant would be jeopardized. However, the Government proffered additional evidence to corroborate the informant, consisting of the testimony of two coconspirators who turned Government's evidence in the trial and who are under the Government witness protection program,[3] as well as other evidence set forth in the margin.[4]

---

**1.** This trial was for armed hijacking of a truck containing fur pelts. Descriptions of the hijackings charged in the other two indictments were admitted as similar act evidence. Fed.R. Evid. 404(b).

**2.** The pleas were in satisfaction of three indictments involving theft of furs and zinc alloy bars from trucks at Kennedy Airport. The charges included possession of goods stolen in interstate commerce, 18 U.S.C. § 659, obstruction of commerce by robbery, 18 U.S.C. § 1951, and conspiracy, 18 U.S.C. § 371.

**3.** The Government revealed the corroborative information it expected to offer in a memorandum of law:

Salvatore Montello, in whose company Carmine Fatico was observed by Suffolk County Detective Robert Johns one day after the March 1971 fur hijackings (76–CR–218), and with whom the defendants Carmine and Daniel Fatico have admitted conspiring, will testify that he himself was associated with organized crime at the time. While not a "made" member—the membership books of organized crime having been closed for several years as of 1971—Montello will admit having been closely affiliated with the Colombo crime family and having worked for the Faticos whom he knew, through other organized crime sources, to be "made" members of the Gambino family.

Montello will testify that in 1971 he had known the defendants for several years, having first met them in "social clubs" which the Fatico's [sic] ran since the early 1960's. According to Montello, these clubs, such as the Bergen Hunt and Fish Clubs in Queens and Suffolk Counties, were centers for gambling and other organized crime activities. In 1969, Carmine Fatico offered Montello a "piece" of his gambling operation in Suffolk County, and put Montello on notice that he, Fatico, was in the market for truckloads of stolen goods. In 1971 when Montello and co-conspirator Llauget began working with the Faticos, it was clear to them from the demeanor of the Faticos and from the respect they received in the criminal community that they were in fact full members of organized crime.

Moreover, Montello and Llauget will testify that in March of 1971, when a dispute arose concerning the quantity and quality of the stolen furs delivered to the Faticos, a "sit down" was arranged with Aniello Dellacroce, the "underboss" of the Gambino family (see Hearings before the Permanent Subcommittee on Investigation, Committee on Government Operations, U. S. Senate, Eighty-Eight [sic] Cong., First Sess., Chart C, p. 294; Meskil, *Meet the New Godfather,* New York Magazine, February 28, 1977, pp. 31–32). Llauget was taken by Daniel Fatico to a "social club" on Mulberry Street in Manhattan where Fatico and Llauget met with Dellacroce and the disgruntled "buyer" of the furs. Dellacroce arbitrated the dispute and, after questioning Llauget about furs, pronounced that Llauget would be paid the agreed price for the furs.

**4.** The memorandum continues:

The Faticos' association with Aniello Dellacroce and the "Gambino family" will be further supported by independent observations of police officers. On November 23, 1966,

The district court took judicial notice, Fed.R.Evid. 201, that major hijacking gangs have been preying on Kennedy Airport, and acknowledged that there was substantial evidence of organized crime's involvement because sophisticated fencing techniques are utilized in these operations. It stated that membership in and ties to professional criminal groups are material facts that should be considered in sentencing,[5] and it noted that the rules of evidence, other than those involving privileges, do not apply in sentencing proceedings. Fed.R.Evid. 1101(d)(3). The district court further recognized that the Government cannot and will not reveal informers' identities because of past murders of informants who implicated organized crime members. Nevertheless, Judge Weinstein concluded that the Fifth Amendment right to due process and the Sixth Amendment right of confrontation would both be violated by introduction of the FBI agent's testimony since the credibility of the informant and the reliability of his information could not be meaningfully attacked through extrinsic evidence or cross-examination.

## II. APPEALABILITY

Appeals by the United States from the suppression of evidence at a sentencing hearing are permissible within the constraints of 18 U.S.C. § 3731, as amended in 1971.[6] Pub.L.No. 91–644, Tit. III, § 14(a), 84 Stat.1890 (1971). The language of the statute appears to permit the present interlocutory appeal. The "decision or order" below was one "suppressing or excluding evidence" and it was "not made after the defendant [had] been put in jeopardy and before the verdict";[7] construing the statute to permit only appeals of *pretrial* suppression or exclusion orders would render the language "and before the verdict" superfluous. Additionally, § 3731 calls for liberal construction in effectuating its purposes.[8] Although the statute itself does not delineate these purposes, the Senate Report accompanying the 1971 amendments clearly

---

officers of the New York Police Department arrested Carmine Fatico together with Aniello Dellacroce and other Gambino family members such as Paul Costellano and Joseph N. Gallo during a raid at a "social club" on Mulberry Street. Fatico, Dellacroce and nine others were charged with consorting with known criminals.

Subsequently in 1976, at the time of the death of the "boss of bosses", Carlo Gambino, police officers surverlling [*sic*] the Gambino funeral services observed Carmine and Daniel Fatico, together with other "family members" being admitted to the funeral home, while scores of other individuals were refused entry.

Finally, the defendants [*sic*] ties to organized crime are underscored by their activities over the years. Both Carmine and Daniel Fatico have lengthy records dating back to the 1930's. Carmine Fatico has been convicted of grand larcey [*sic*], bookmaking and felonious assault. His brother Daniel has an extensive arrest record for such organized crime activities as burglary, bookmaking, policy, illicit manufacture of alcohol and running a disorderly house. Daniel has been covicted [*sic*] of assault, unlawful entry and conspiracy to posses [*sic*] an unregistered still. By their instant pleas, the Faticos have admitted participation in conspiracies involving armed truck hijackings and the fencing of truckloads of stolen goods. Such activities are clearly those of organized crime.

**5.** The court cited 18 U.S.C. § 3577 which provides:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

Appellant does not dispute the finding of materiality.

**6.** The second paragraph of 18 U.S.C. § 3731 provides:

An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts [*sic*] suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

**7.** The Government also duly filed with the district court the requisite certification.

**8.** The fifth paragraph of 18 U.S.C. § 3731 provides: "The provisions of this section shall be liberally construed to effectuate its purposes."

indicates that an appeal such as is here involved was within the contemplation of Congress:

> On occasion a Federal court requires the suppression of evidence in connection with a probation revocation hearing, a hearing on a motion for a new trial based on newly discovered evidence, *a sentencing proceeding,* or other criminal proceeding. While there are sound reasons for believing that any judge making such an order may be acting ultra vires in terms of the purposes of such a hearing, and thus may be subject to a petition for a writ of mandamus to correct his action, S. 3132 is designed to obviate any such problems by affording the Government a certain and efficient remedy through the right to appeal.

S.Rep.No.91–1296, 91st Cong., 2d Sess., at 12 (1970) (footnotes omitted) (emphasis added). The report continues:

> The amended Criminal Appeal Act is intended to be liberally construed so as to effectuate its purpose of permitting the Government to appeal from dismissals of criminal prosecutions by district courts in all cases where the Constitution permits, and from all suppressions and exclusions of evidence in criminal proceedings, except those ordered during trial of an indictment or information. S. 3132 places on the face of section 3731 an explicit expression of this intent, in view of the restrictive judicial interpretations of congressional intent which have resulted from the histories of the earlier versions of section 3731 despite strong indications in the debate on the 1907 act that it should be broadly interpreted.

*Id.* at 18 (footnotes omitted).

Accordingly, we hold that the order is appealable.

## III.  THE MERITS

▉▉▉  As the court below correctly stated, the Federal Rules of Evidence, except those relating to privileges, do not apply to sentencing proceedings. Fed.R.Evid. 1101(d)(3). The statute, 18 U.S.C. § 3577, moreover, requires that "[n]o limitation" be placed on "the information concerning the background, character, and conduct of a person convicted of an offense  . . . for the purpose of imposing an appropriate sentence." *See* note 5 *supra.* Thus any exclusion must be based not merely upon the hearsay nature of the evidence but on its Due Process or Confrontation Clause implications.[9]

The Due Process Clause is plainly implicated at sentencing. *E. g., Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (plurality); *Williams v. New York,* 337 U.S. 241, 252 n. 18, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *Townsend v. Burke,* 334 U.S. 736, 740–41, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *see* Note, *Procedural Due Process at Judicial Sentencing for Felony,* 81 Harv.L.Rev. 821, 825, 826 (1968). It does not necessarily follow, however, that all of the procedural safeguards and strict evidentiary limitations of a criminal trial proper are required. *Gardner v. Florida, supra,* 430 U.S. at 358 n. 9, 97 S.Ct. 1197, 51 L.Ed.2d 393. The Supreme Court has held quite to the contrary, specifically on the issue of hearsay in a presentence report. *Williams v. New York, supra,* held that it was not a denial of due process in sentencing to rely on information supplied by witnesses whom the accused could neither confront nor cross-examine.[10]

We must recognize that most of the information now relied upon by judges to

---

**9.**  The Advisory Commission's caveat to Fed.R. Evid. 1101(d) states: "The rule [excepting applicability of evidence rules to sentencing proceedings] is not intended as an expression as to when due process or other constitutional provisions may require an evidentiary hearing." 56 F.R.D. 183, 351 (1972). Thus, the presumption of constitutionality which usually accompanies rulemaking, *see Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), is inapplicable to the sentencing proceeding before us.

**10.**  Contrary to the district court's intimations, *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079 (1949), has not been overruled by *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (plurality). *Gardner* held that a defendant cannot be sentenced to death based on secret information in a presentence investigation report which he cannot dispute or

guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination. And the modern probation report draws on information concerning every aspect of a defendant's life. The type and extent of this information make totally impractical if not impossible open court testimony with cross-examination. Such a procedure could endlessly delay criminal administration in a retrial of collateral issues.

The considerations we have set out admonish us against treating the due process clause as a uniform command that courts throughout the Nation abandon their age-old practice of seeking information from out-of-court sources to guide their judgment toward a more enlightened and just sentence. . . . The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due-process clause would hinder if not preclude all courts—state and federal—from making progressive efforts to improve the administration of criminal justice.[11]

*Id.* 337 U.S. at 250–51, 69 S.Ct. at 1084–1085 (footnote omitted).

■ *Williams* does not hold that all hearsay information must be considered. *See United States v. Bass,* 175 U.S.App.D.C. 282, 292, 535 F.2d 110, 120 (1976) (Bazelon, *C. J.*). Indeed, it is well recognized that materially false information used in sentencing may invalidate the sentence imposed. *E. g., United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Townsend v. Burke, supra; United States v. Stein,* 544 F.2d 96, 102–03 (2d Cir. 1976); *United States v. Bass, supra,* 535 F.2d at 118; *United States v. Needles,* 472 F.2d 652, 657–58 (2d Cir. 1973). Additionally, a significant possibility of misinforma-

explain because it is not disclosed to him. The Court noted that *Williams'* holding was not "directly applicable" because in *Williams* the facts contained in the report upon which the trial court relied were revealed to counsel in open court. *Id.* at 356, 97 S.Ct. 1197 (opinion of Stevens, *J.*). In this case, as in *Williams,* the defendant was apprised of all information proffered by the Government. Additionally, even if *Gardner* is interpreted as having qualified *Williams,* see 430 U.S. at 356–58, 362, 97 S.Ct. 1197 (opinion of Stevens, *J.*), there can be no doubt that its holding is strictly limited to due process guarantees in *capital* cases. *See id.* at 356, 359, 360; *id.* at 363–64, 97 S.Ct. 1197 (opinion of White, *J.*). *See also Hollis v. Smith,* 571 F.2d 685, at 692 (2d Cir. 1978).

The district court also believed that *Williams'* reasoning had been undercut by other recent Supreme Court cases. It relied heavily on pronouncements in parole, *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and probation revocation, *Gagnon v. Scarpelli,* 411 U.S. 778, 790, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), contexts that due process requires that the prisoner be permitted to confront and cross-examine adverse witnesses. *But see Wolff v. McDonnell,* 418 U.S. 539, 567, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (to the contrary in prison disciplinary proceedings—loss of good time credit—because of "potential for havoc inside the prison walls"). While sentencing procedures may more closely resemble parole and probation revocations than loss of good time credit, as the court below found, it does not follow that all or even most out-of-court declarations must be subject to cross-examination in order to be admissible in a sentencing proceeding. *Morrissey* recognizes only a qualified right to confrontation of witnesses. At the parolee's preliminary hearing, if the hearing officer finds that an informant would risk harm if his identity were revealed, confrontation and cross-examination are not mandated by due process. 408 U.S. at 487, 92 S.Ct. 2593. At the revocation hearing, confrontation and cross-examination are not required if the "hearing officer specifically finds good cause for not allowing confrontation." *Id.* at 489, 92 S.Ct. at 2604. Similarly, the right to counsel articulated in *Gagnon* is determined on a case-by-case basis. 411 U.S. at 790, 93 S.Ct. 1756. Moreover, each stage of the criminal trial and post-conviction process must be examined independently in determining a defendant's due process rights. *See Wolff v. McDonnell, supra,* 408 U.S. at 481, 94 S.Ct. 2963; *Gagnon v. Scarpelli, supra,* 411 U.S. at 788–89, 93 S.Ct. 1756.

11. True, in *Williams,* the sentencing court was not "asked . . . to afford appellant a chance to refute or discredit any of [the statements made in the reports] by cross-examination or otherwise." *Williams v. New York, supra,* 337 U.S. at 244, 69 S.Ct. at 1081. But the case does not turn on any concept of waiver by failure to object. It rests, rather, on the broad ground that due process does not preclude reliance on out-of-court information in imposing sentence.

tion justifies the sentencing court in requiring the Government to verify the information. *See United States v. Weston,* 448 F.2d 626, 634 (9th Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972); *United States v. Bass, supra,* 535 F.2d at 121; *United States v. Needles, supra,* 472 F.2d at 658. But when the defendant does not dispute the truth of the statements sought to be introduced, *United States v. Bass, supra,* 535 F.2d at 120–21, or the statements are sufficiently corroborated by other evidence, *see United States v. Needles, supra,* 472 F.2d at 659, hearsay is admissible in sentencing proceedings.[12]

The thrust of *Bass, Needles* and *Weston* is that the reliability of evidence that is difficult to challenge must be ensured through cross-examination or otherwise, by demanding certain guarantees of reliability. Here, once the defendants challenged the truth of the hearsay statement, the district court correctly called for additional corroboration by the Government. *United States v. Needles, supra,* 472 F.2d at 658. But such corroboration was available by testimony of two coconspirators, *see* note 3 & accompanying text *supra,* the nature of the crime itself, *see ante* at p. 709, and the testimony of those who observed appellees with members of the Gambino family. *See*

note 4 *supra.* Sufficient reliability is apparent; the proffered corroborating evidence was adequate.

We hold, therefore, that Due Process does not prevent use in sentencing of out-of-court declarations by an unidentified informant where there is good cause for the nondisclosure of his identity [13] and there is sufficient corroboration by other means. Thus, the trial court erred in excluding the agent's testimony about the informer's declaration once the Government represented that it would produce the specified corroboration.[14]

While it is not clear whether, or to what extent, the Confrontation Clause of the Sixth Amendment [15] is implicated at sentencing, *compare United States v. Fischer,* 381 F.2d 509, 511 (2d Cir. 1967), *with Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) (right to counsel); *see generally* Cohen, *Sentencing, Probation, and the Rehabilitative Ideal: The View from Mempa v. Rhay,* 47 Texas L.Rev. 1, 2–6, 8 & n. 33, 12–16, 20–22 (1968), or to what extent that Clause overlaps with the hearsay rule and Due Process guarantees when statements of out-of-court declarants cannot be refuted by cross-examination,[16]

---

12. Even in *United States v. Weston,* 448 F.2d 626, 634 (9th Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972), where the court of appeals held that due process was infringed by reliance on narcotics agents' statements partially supported by a confidential informant's report, the court remanded for resentencing, permitting such reliance if the presentence report were "amplified by information such as to be persuasive of the validity of the charge there made."

13. *See United States v. Perri,* 513 F.2d 572, 575 (9th Cir. 1975) (if necessary, identity of informant may be safeguarded when sentencing court reveals adverse information in a presentence report); American Bar Association Standards Relating to Sentencing Alternatives and Procedures § 4.4(b) (Approved Draft 1968) (same); *see also McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *United States v. Turbide,* 558 F.2d 1053, 1060–61 (2d Cir. 1977), *cert. denied, Perez v. United States,* 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1978); *United States v. Gonzales,* 555 F.2d 308, 314 (2d Cir. 1977);

*United States v. Morell,* 524 F.2d 550, 557 (2d Cir. 1975).

14. Of course, the weight given to the informer's declarations and the assessment of credibility are matters for the sentencing court. *See United States v. Doyle,* 348 F.2d 715, 721 (2d Cir.), *cert. denied,* 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965).

15. In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S.Const. amend. VI.

16. *See Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213

for present purposes it is unnecessary to differentiate between the requirements of the Due Process Clause of the Fifth Amendment and the Confrontation Clause of the Sixth. Both constitutional safeguards, as applied in this context, are directed at ensuring the fairness of criminal proceedings by defining the situations in which confrontation by cross-examination must be afforded a defendant. And for the same reasons which counsel rejection of a due process attack, we conclude that admission of an unidentified informant's corroborated declarations in a sentencing proceeding where there is good cause for not disclosing his identity is not barred by the Confrontation Clause.

Judgment reversed.[17]

(1970); *California v. Greene,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); Natali, Green, Dutton and Chambers: *Three Cases in Search of a Theory,* 7 Rutgers-Camden L.J. 43, 43–62 (1975); Younger, *Confrontation and Hearsay: A Look Backward, A Peek Forward,* 1 Hofstra L.Rev. 32, 32–42 (1973). *Compare Dutton v. Evans, supra,* 400 U.S. at 95–97, 91 S.Ct. 210 (Harlan, *J.,* concurring), *with California v. Greene, supra,* 399 U.S. at 172–73, 90 S.Ct. 1430 (Harlan, *J.,* concurring).

**17.** While we express no views on the sentence ultimately to be imposed, we do not understand the statement in the trial court's opinion that "[a]t stake, is the difference between freedom and up to five years in prison." *United States v. Fatico,* 441 F.Supp. 1285, 1299 (E.D.N.Y. 1977). Why the district court suggests that the defendants may go free despite their conviction if the agent's testimony is excluded, but will receive sentences of five years if it is allowed, is not readily apparent. We note that the sentencing court presided at the trial in which testimony of two coconspirators tying the defendants to three hijackings was presented. Furthermore, we are informed by a post-appeal memorandum that the presentence report describes defendants' participation in the three hijackings and their prior criminal records. The proffered testimony on organized crime ties does not appear to alter significantly the picture already on the record of the type of crime involved, the role of defendants as revealed at the trial and their prior conduct.