UNITED STATES of America, Appellee,

v.

Robert W. MILLER, Defendant–Appellant.

No. 1201, Docket 92–1655.

United States Court of Appeals, Second Circuit.

Argued March 9, 1993.

Decided May 12, 1993.

Faith E. Gay, Asst. U.S. Atty., Brooklyn, NY (Mary Jo White, U.S. Atty., E.D.N.Y., Peter A. Norling, Emily Berger, Asst. U.S. Attys., on the brief), for appellee.

Michael S. Krome, Richmond Hill, NY (Anthony V. Lombardino, on the brief), for defendant-appellant.

Before: TIMBERS, KEARSE, and PRATT, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Robert W. Miller appeals from a judgment entered in the United States District Court for the Eastern District of New York following his plea of guilty before Eugene H. Nickerson, *Judge*, convicting him on three counts of mailing threatening communications, in violation of 18 U.S.C. § 876 (1988). In an upward departure from the range recommended by the applicable federal Sentencing Guidelines ("Guidelines"), Miller was sentenced principally to three concurrent 24-month terms of imprisonment, to be followed by three concurrent three-year terms of supervised release, and was fined $3,000. On appeal, Miller contends principally that the government breached its plea agreement by seeking an upward departure from the Guidelines. For the reasons below, we affirm the judgment.

## I. BACKGROUND

The following description of the events is drawn largely from the Probation Department's Presentence Report ("PSR"), whose factual statements Miller did not dispute, and from findings by the district court.

From the late 1970s to mid–1989, Miller had rented an apartment in the Queens, New York home of John Grusha, a man of Polish extraction with whom Miller sometimes socialized. In 1987, John Grusha married Maria Grusha, a dark-skinned native of India, who moved into his home. In early 1989, after the Grushas questioned Miller about a "wild party" their neighbors said Miller had thrown while the Grushas were away, the Grushas began to receive threatening letters and telephone calls, and their property was repeatedly vandalized. The letters, which contained racist remarks, pornographic pictures, and threats such as "move out or else," were sent over a three-year period. The Grushas suspected that Miller was responsible for the vandalism and threats. During that period, John Grusha died of cancer; the threatening letters continued.

Miller was eventually arrested and was charged in a six-count indictment. He entered into an oral plea agreement with the government, pursuant to which he pleaded guilty to three counts of mailing threatening letters to Maria Grusha, in violation of 18 U.S.C. § 876, in satisfaction of all charges. The government agreed that Miller could move for a downward departure from the Guidelines. At the plea hearing, the court asked about the terms of the plea agreement, and the colloquy was as follows:

Ms. GAY [Assistant United States Attorney]: Your Honor, the only agreement is simply that if the three counts that you have just referred to, which are counts two, four and five, are pleaded guilty to by the defendant, the other three counts in the superseding indictment will be dropped and the three counts that the defendant pleads guilty to will be in satisfaction of all charges.

THE COURT: All right. Is that the entire agreement, Mr. Lombardino?

MR. LOMBARDINO [Counsel for Miller]: No, your Honor, I have a different view of

my understanding with the government most respectfully.

My understanding with the government is that, first of all, the government would not oppose the credit for acceptance of responsibility.

THE COURT: Do you oppose that?

MS. GAY: No.

MR. LOMBARDINO: In addition thereto, it is my understanding, and I made it very clear to the attorney for the government, who has been very cordial with me throughout these proceedings, that at the time of sentence I would be seeking or urging upon the court, for whatever it might be worth, hopefully constructive in favor of my client, for downward departure, and it is my understanding that the government is not going to oppose my making application, and submitting whatever I think is appropriate to seek a downward departure.

THE COURT: They don't have to agree with it. Is that correct?

MR. LOMBARDINO: Yes. I agree they don't have to, but in all candor—

THE COURT: They are not going to say you can't make that application.

MR. LOMBARDINO: Exactly.

THE COURT: Is that it?

MR. LOMBARDINO: Yes.

THE COURT: Do you agree with that?

MS. GAY: Just with one caveat, which is that the motion for downward departure, the thrust of it would be dealing with if [sic] defendant's psychiatric state, and that's the only subject matter in terms of a downward departure motion that we have discussed.

THE COURT: Is that correct?

MR. LOMBARDINO: That is the caveat that the government attorney had told me this morning, but I think your Honor really said it before, that I think that any defendant might have a right to make the application for downward departure; it would be a matter for the court—

THE COURT: Either you agree on this or not.

MS. GAY: The government is not going to attempt to bar Mr. Lombardino from making his motion.

MR. LOMBARDINO: Then we agree.

THE COURT: All right. Now, is that the total agreement between you and the government as your counsel and the government have stated it.

THE DEFENDANT: Yes, sir, yeah.

(Plea Transcript, January 6, 1992, at 8–10.)

The PSR thereafter prepared on Miller determined that under Guidelines § 2A6.1 his base offense level was 12. It stated that the three counts of conviction should not be grouped and that the offense level should thus be increased by three steps pursuant to Guidelines § 3D1.4. The PSR also recommended that the offense level be reduced by two steps for acceptance of responsibility. After these adjustments, Miller's resulting offense level was 13. Since his criminal history category was I, the term of imprisonment prescribed by the Guidelines was 12–18 months.

The PSR also stated that Maria Grusha described the years of harassment as a " 'living hell,' " during which she and her husband became afraid to answer the telephone or open their mail. She seemed to believe that the threatening letters had hastened her husband's death, and she planned to leave the New York area because of her fear of Miller. She wrote, " 'I live in a suspense because sooner or later [Miller] will be back.' " The PSR advised that, pursuant to Guidelines § 5K2.3, the court could depart upward from the prescribed imprisonment range if it found that Miller's conduct had caused Maria Grusha serious psychological damage. Prior to sentencing, the government moved for an upward departure on this ground.

At the sentencing hearing, Miller objected to the government's upward departure motion, and he moved for a downward departure principally on the ground that he was making progress in anti-aggression rehabilitation. In challenging the government's motion, Miller argued that the oral plea agreement barred the government not only from opposing his making a downward-departure motion but also from making its own motion for an upward departure. His counsel was unable, however, to point to any promise by the government not to make such a motion,

and the district court rejected his argument, stating that though the government had agreed not to object to Miller's making a motion, the court "didn't construe [that] to mean that they weren't going to move for an upward departure." (Sentencing Transcript, October 30, 1992, at 3.) The court also indicated that it would have been inclined to depart upward even if the government had not moved for such a departure. (*Id.*) After hearing further from counsel and from Miller himself, the court stated as follows:

> I'm going to depart upward. I really found this very shocking, this crime. The reason I do that is because I consider guideline 5K2.3 as to the psychological injury that was suffered by this victim here.
>
> There were three years here of threatening letters, telephone calls, there are both as the record shows both racist and phonographic [sic]. There w[ere] incidents of property*damage, the victim[']s husband was suffering from cancer. Even after his death the defendant continued the threats. She described it as living in hell. They were afraid to answer the phone or pick up their mail fearing they would contain threats.
>
> Also she according to the probation department, she's concerned sooner or later that the defendant would be back, she's afraid to remain in the New York area …[.]

(*Id.* at 6–7.)

Accordingly, the court departed from the Guidelines' range of 12–18 months and sentenced Miller to three concurrent 24–month terms of imprisonment. This appeal followed.

## II. DISCUSSION

On appeal, Miller principally pursues his contention that because the government agreed not to oppose Miller's making a motion for a downward departure from the Guidelines, the government's motion for an upward departure breached the plea agreement. He also argues that the district court should have grouped the counts of conviction, that there was insufficient evidence to support the upward departure, and that the

court should have departed downward. We find no basis for reversal.

### A. *The Scope of the Plea Agreement*

 Miller argues that when the government agrees not to oppose a defendant's motion for a downward departure from the Guidelines, it must be deemed to have implicitly agreed also not to move for an upward departure. We disagree.

Part K of Chapter 5 of the Guidelines governs departures from the sentencing ranges recommended by other parts of the Guidelines. In addition to noting that the court has statutory authority to depart either upward or downward if it finds that " 'there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described,' " Guidelines § 5K2.0 (quoting 18 U.S.C. § 3553(b) (1988)), the Guidelines themselves specify a number of circumstances in which a departure may be warranted. For example, the court is expressly authorized to depart downward if it finds that the victim's wrongful conduct contributed significantly to provoking the offense behavior, *see* Guidelines § 5K2.10; or if it finds that the defendant committed the offense in order to avoid a perceived greater harm, *see id.* § 5K2.11, or because he was under serious coercion, blackmail, or duress, *see id.* § 5K2.12, or because his nonviolent offense was committed while he was suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, *see id.* § 5K2.13. The court is expressly authorized to depart upward if it finds, for example, that the offense conduct resulted in death, *see id.* § 5K2.1, or significant physical injury, *see id.* § 5K2.2, or extreme psychological injury, *see id.* § 5K2.3; or if it finds that the defendant committed the offense in order to facilitate or conceal the commission of another offense, *see id.* § 5K2.9, or in furtherance of a terroristic action, *see id.* § 5K2.15.

Plainly the grounds on which the court may depart are diverse, and factors that could warrant a departure upward may well

coexist with factors that could warrant a departure downward. Though well-founded motions for upward and downward departures may well offset each other, with the result that the sentence ultimately imposed is within the Guidelines' prescribed range, that result does not detract from the possible coexistence of competing factual foundations.

Accordingly, we see no basis in the Guidelines or in logic for Miller's proposition that an agreement by the government not to oppose a defendant's motion for a downward departure should, in the absence of an express agreement, bar the government from seeking an upward departure on appropriate grounds.

Nor can we conclude that the plea bargain actually struck in this case barred the government's motion. To determine whether a plea agreement has been breached, a court must look to what the parties reasonably understood to be the terms of the agreement. *See United States v. Casamento*, 887 F.2d 1141, 1181 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990); *United States v. Carbone*, 739 F.2d 45, 46 (2d Cir.1984); *Paradiso v. United States*, 689 F.2d 28, 31 (2d Cir.1982) (per curiam), *cert. denied*, 459 U.S. 1116, 103 S.Ct. 752, 74 L.Ed.2d 970 (1983). In construing such an agreement, any ambiguity should be resolved against the government. *See United States v. Feigenbaum*, 962 F.2d 230, 234 (2d Cir.1992).

In this case, the plea agreement, as explained to the court at the plea hearing, contained no ambiguities. The government stated merely that it was "not going to attempt to bar [Miller] from making his motion" for a downward departure. The court understood this to mean simply, "They are not going to say you can't make that application." And counsel for Miller stated that "the government is not going to oppose my making application, and submitting whatever I think is appropriate to seek a downward departure," but "they don't have to [agree]." Thus, Miller conceded at the plea hearing that the government did not even promise that it would endorse Miller's request for a downward departure, much less promise that it would not seek an upward departure. Be-

cause Miller could not reasonably have believed that the plea agreement barred the government from seeking an upward departure from the Guidelines, his claim that the government breached the agreement is meritless.

Finally, we note that even without regard to the possibility of a government motion for upward departure, greater specificity in the terms of plea bargains is desirable. In appeals challenging sentences, this Court has seen numerous plea-bargain variations on the downward-departure theme, including bargains in which (1) the defendant agrees that he will not request a downward departure; or (2) the defendant is expressly allowed to move for a downward departure and (a) the agreement is silent as to what position the government will take, or (b) the government agrees that it will take no position on the motion, or (c) the government agrees that it will not oppose the motion, or (d) the government agrees that it will join the motion. Given the variety of agreements that have apparently routinely been reached, we see no implication in a plea bargain's silence as to what position the government will take that the government has promised to take any specific position. Thus, we conclude that a simple oral agreement that the defendant may move for a downward departure, with no stipulation as to what position the government will take, is not ambiguous but simply leaves the government free to take the position of its choice. As we have done in the past, we urge the parties to be precise in the terms of their plea bargains and to reduce their agreements to writing.

### B. *Miller's Other Arguments*

Miller's other arguments, challenging the district court's failure to "group" the three counts to which he pleaded guilty and the court's departure rulings, need not detain us long.

■ Guidelines § 3D1.2 provides that, in order to determine a defendant's offense level, "counts involving substantially the same harm shall be grouped together." Counts of conviction "involv[ing] the same victim and two or more acts or transactions connected by a common criminal objective or constitut-

ing part of a common scheme or plan" should be grouped, Guidelines § 3D1.2(b), so long as the counts "represent essentially one composite harm to the same victim ..., even if they constitute legally distinct offenses occurring at different times," Guidelines § 3D1.2 Application Note 4. However, offenses that involve "multiple, separate instances of fear and risk of harm," such as "robbery of the same victim on different occasions," should not be grouped. *Id.*

Miller was convicted of mailing threatening letters to Maria Grusha in March, May, and July 1991. Although these letters were arguably part of a common scheme of harassment, we see no error in the court's finding that each letter inflicted separate psychological harm. Thus, we conclude that the district court properly refused to group the counts of conviction.

 Miller's contention that the record did not warrant an upward departure on the ground of psychological harm to the victim also has no merit. The Guidelines permit an upward departure when psychological injury to the defendant's victim was "much more serious than that normally resulting from commission of the offense," as, for example,

> when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns.

Guidelines § 5K2.3; *see, e.g., United States v. Pergola,* 930 F.2d 216, 218–19 (2d Cir.1991) (upward departure permissible when victim "could not sleep, could not form close relationships, and lived in constant fear of being killed" as a result of threatening communications).

In this case, the court's determination that Miller was responsible for three years' worth of harassment, and not for just the three threatening letters he admitted sending Maria Grusha, was amply supported by the undisputed facts set forth in the PSR. The court's findings that Maria Grusha had been afraid to answer the telephone or open her mail for three years and that she was afraid

to remain in the New York area are not clearly erroneous. These findings, together with the fact that John Grusha was dying from cancer during the years of harassment and that Maria Grusha viewed the harassment as hastening his demise, sufficed to support the court's conclusion that Miller's acts had caused inordinate psychological harm and its decision to depart upward pursuant to Guidelines § 5K2.3.

Finally, Miller's contention that the district court erred in denying his motion for a downward departure presents no reviewable issue. A court's refusal to depart downward from the Guidelines is not appealable unless the court mistakenly believed it lacked authority to depart. *See, e.g., United States v. Mickens,* 977 F.2d 69, 72 (2d Cir.1992); *United States v. Ritchey,* 949 F.2d 61, 63 (2d Cir.1991) (per curiam); *United States v. Richardson,* 923 F.2d 13, 15 (2d Cir.1991). There being no indication in the record that the court believed it lacked that authority, Miller's challenge to the failure to depart downward is not a proper subject for appeal.

## CONCLUSION

We have considered all of Miller's arguments that are properly before us on this appeal and have found them to be without merit. The judgment of conviction is affirmed.