UNITED STATES of America, Appellee,

v.

Luis E. GAVIRIA, Defendant–Appellant.

No. 719, Docket 94–1272.

United States Court of Appeals,
Second Circuit.

Argued Jan. 13, 1995.

Decided March 8, 1995.

Donna R. Newman, New York City, for defendant-appellant.

Julie E. Katzman, Asst. U.S. Atty., Brooklyn (Zachary W. Carter, U.S. Atty. for the E.D.N.Y., Robert P. LaRusso, Joseph R. Conway, Asst. U.S. Attys., Brooklyn, NY, of counsel), for appellee.

Before: KEARSE, McLAUGHLIN, and CABRANES, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Luis Gaviria pled guilty to possessing cocaine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). At sentencing in the United States District Court for the Eastern District of New York (Thomas C. Platt, *Chief Judge*), the district court determined that Gaviria intended to distribute 743 kilograms of cocaine. The district court sentenced Gaviria to 235 months' imprisonment, the bottom of the applicable Guideline range.

On appeal, Gaviria argues, and the government concedes, that his sentence should be vacated and the matter remanded for resentencing before a different district judge due to confusion over whether Gaviria was guaranteed a two-level downward adjustment for playing a minor role in the offense. Gaviria also argues that he was denied due process at his sentencing and that the total amount of cocaine involved was erroneously calculated.

We hold that, under *United States v. Enriquez*, 42 F.3d 769 (2d Cir.1994), Gaviria deserves to be resentenced before a different district judge. Accordingly, we do not reach his remaining claims of error.

## BACKGROUND

Gaviria was part of a drug-smuggling ring, led by Richard Espinosa, that brought over 4,000 kilograms of cocaine into the United States. Police arrested Espinosa in Ronkonkoma, Long Island, shortly after a truck arrived at his warehouse carrying several hundred kilograms of cocaine. Gaviria was arrested a few miles away where he and Hugo Cartagena were waiting to take delivery of Cartagena's share of the cocaine, totalling 100 kilograms.

Gaviria pled guilty to possessing cocaine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). There was no written plea agreement. Instead, the government agreed orally "that it [would] not contest the probation department finding for two points off for acceptance of responsibility and two points off for minor role."

At the plea hearing, the following exchange ensued:

COURT You understand that, Mr. Gaviria?

GAVIRIA He said two points for the plea of guilty, and four points for minor participation?

COURT Two points.

GAVIRIA I thought it was four points.

COURT It is two plus two.

GAVIRIA I was told it was six.

COUNSEL It is possible, but it is definitely four.

COURT Do you understand?

GAVIRIA Okay.

Thus, Gaviria and his counsel came away from the hearing with the impression that the agreement "definitely" promised a minor role reduction, rather than a commitment that the government would not object to such a reduction *if* the Probation Department recommended one. This was not further clarified during the plea colloquy.

The Probation Department issued its presentence report ("PSR") several months later. The PSR did not hold Gaviria accountable for the 4000 kilograms of cocaine brought in overall by Espinosa's ring, or even for all the cocaine delivered to Espinosa the day of Gaviria's arrest. Instead, the PSR recommended that Gaviria be held accountable for only 550 kilos, based largely on other deliveries to Cartagena in which Gaviria played a role. The corresponding base offense level was 40 under U.S.S.G. § 2D1.1(c)(2) (1993). The PSR called for a two-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a). Significantly, it concluded that Gaviria was Cartagena's right-hand man, and therefore did not recommend a minor role downward adjustment under U.S.S.G. § 3B1.2. Thus, Gaviria's adjusted offense level was 38, with a corresponding sentencing range of 235 to 293 months.

Before sentencing, Gaviria attacked the PSR. Admitting responsibility for only one kilogram of cocaine, he claimed to have earned the two-level minor role downward adjustment. The district court conducted a *Fatico* hearing to resolve these issues. *See United States v. Fatico*, 579 F.2d 707 (2d Cir.1978), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980). Before starting the hearing, however, the court warned Gaviria that the hearing could tie him to even more extensive drug activity than the PSR indicated. This proved prophetic: the *Fatico* hearing revealed, in the court's words, a "rather extensive drug operation, to put it mildly."

At sentencing, relying on evidence from the *Fatico* hearing, the court held Gaviria accountable for 743 kilograms of cocaine, rather than the 550 noted in the PSR. This did not change Gaviria's base offense level, however, since the amount was still between 500 and 1,500 kilos. *See* U.S.S.G. § 2D1.1(c)(2) (1993). Accordingly, the court adopted the PSR's offense level recommendation and agreed with the PSR that the downward adjustment for a minor role should be denied. The court did, however, sentence Gaviria to the bottom of the applicable range: 235 months' imprisonment.

Gaviria now appeals.

## DISCUSSION

Gaviria raises three issues on appeal. We need reach only one.

█ The government concedes in its brief that Gaviria's sentence should be vacated and the case remanded for resentencing because "Gaviria may reasonably have misunderstood the terms of his plea agreement" as guaranteeing a two-level reduction for his minor role in the offense of conviction. At the time of his plea, Gaviria was left with the reasonable impression that he would receive that two-level reduction. The government promises on remand that it will not oppose this reduction. Accordingly, we remand for resentencing.

That does not end our inquiry, however. Both parties suggested at oral argument that the resentencing be conducted by a different judge. We agree.

In *United States v. Enriquez*, 42 F.3d 769 (2d Cir.1994), we held that, in certain circumstances, a resentencing must be before a different judge. In *Enriquez*, the defendant entered into a written plea agreement in which the government said it would "agree to a Probation Department finding that the defendant is entitled to a two-level adjustment for acceptance of responsibility." *Id.* at 770. During the plea allocution, however, the prosecutor described the agreement somewhat differently: in her view, the government would not "contest that [the defendant] be given" the acceptance of responsibility adjustment. *Id.* at 771 (internal quotes omitted). Months later, the Probation Department recommended against the adjustment. At sentencing, the government supported the Probation Department's recommendation. The district court denied the adjustment, and the defendant appealed.

On appeal, the government contended that it followed the written plea agreement to the letter, since it had no obligation to agree to the downward adjustment "unless and until the Probation Department · in fact recommended the adjustment, which it did not do." *Id.* at 772. Nonetheless, the government acknowledged that it had violated the agreement as described orally at the plea allocution, and agreed that the defendant's sentence should be vacated and remanded to a different judge for ·resentencing.

We granted the relief both parties requested, noting that a court interpreting a plea agreement must look to "'what the parties reasonably understood to be the terms of the agreement.'" *Id.* (quoting *United States v. Miller*, 993 F.2d 16, 20 (2d Cir.1993)). We cautioned that the terms of the defendant's plea agreement were "confusing" and "unclear," and concluded that the government should find language "that will convey to each of the parties, and the court, a clear understanding of the rights and obligations created" under the plea agreement. *Id.*

In remanding to a different district judge, we emphasized that the sentencing judge's "disqualification result[ed] not from any inappropriate action on his part, but by reason of the government's failure to adhere to its contractual obligation." *Id.* at 772. We reasoned:

> [t]he effect of the government's breach of its commitment is difficult to erase if the case remains before the same judge, because the judge's decision to deny the reduction was based on his assessment of the facts. As the facts on remand will be the same, regardless of the arguments advanced by the PSR and the government, it is likely that the same judge would reach the same result as he reached before. On the other hand, had the government adhered to its commitment not to contest the defendant's request for a two-level reduction, there is some likelihood that the judge would never have given serious thought to denying it. Resentencing before the same judge might therefore deprive the defendant of the benefit he was promised in the plea agreement.

*Id.*

Here, unfortunately, there was no written agreement. The oral agreement, however, contained the same infelicitous promise not to contest the Probation Department's finding regarding the downward adjustment that we found so troubling in *Enriquez*. And, it is at least as likely here, as it was in *Enriquez*, that if we remand to the sentencing judge, he will be hard pressed to take a fresh look at whether Gaviria should receive the downward adjustment. Any doubt about this is dispelled by perusing the record of the *Fatico* hearing. At a sidebar the following colloquy took place:

> COURT Apparently, [defense counsel] thinks there is a dispute here. Why not get Cartagena in here and have him testify on the whole schedule of the kilos and I will sentence him accordingly? Why do we waste our time with this witness? Why not get [Cartagena] in here?
>
> . . . .
>
> Get [the other coconspirators] in, and we will get the 4,157 kilos, and this fellow will never ask for another *Fatico* hear-

ing if you do that, and that's the end of it, and there will be no appeal.

. . . .

Why don't you prove the 4,000 kilos and end this once and for all. *Nothing would please the—solve the problem better than you to prove something like this. And he is sentenced on 4,000 kilos rather than 200 or 400 kilos, or 500 kilos. 4,000 will up his point score right out of sight.* That's the way to do it. Don't do it that way. Let's go.

[To defense counsel] You are asking for it, they are going to give it to you.

COUNSEL Your Honor, I don't have what they have. But perhaps to save the Court time—

COURT *I don't want to save time. I want to sentence him for 4,157 kilos.*

. . . .

[To AUSA] Half baked measures, prove your case. You have the proof. Bring the witnesses in here over the next month.

COUNSEL Your Honor, if we may have five minutes I think we may be able to resolve this.

COURT *If you think for one minute I am going to settle for anything less than 20 years, you are crazy.*

(Emphasis added).

We appreciate that "remanding to a different district judge is an 'extraordinary remedy . . . [to] be reserved for the extraordinary case.'" *Sobel v. Yeshiva Univ.*, 839 F.2d 18, 37 (2d Cir.1988) (quoting *United States v. Robin*, 545 F.2d 775, 784 (2d Cir.1976) (Timbers, J., dissenting)), *cert. denied*, 490 U.S. 1105, 109 S.Ct. 3154, 104 L.Ed.2d 1018 (1989). But, as we have noted on another occasion, "[s]entence should be imposed by a judge who has not expressed an opinion which makes it clear that remand is an empty gesture." *United States v. McDavid*, 41 F.3d 841, 844 (2d Cir.1994). Equally important from an institutional point of view is "the need to maintain the appearance of justice." *Id.*

## CONCLUSION

We vacate the judgment of sentence and remand for resentencing before a different district judge. We do not reach Gaviria's remaining claims of error.