14-2179-cr (L)
United States v. Qualls

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 28th day of May, two thousand fifteen.

Present:    ROSEMARY S. POOLER,
            RAYMOND J. LOHIER, JR.,
            SUSAN L. CARNEY,
                    *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

                    *Appellee*,

            v.                                    14-2179-cr (L), 14-2236
                                                  (Con)

THOMAS W. QUALLS,

                    *Defendant-Appellant*.

_____

Appearing for Appellant:    Zachary Margulis-Ohnuma, (Sharlene Morris, *on the brief*), New York, N.Y.

Appearing for Appellee:     David K. Kessler, Assistant United States Attorney, (Jo Ann M. Navickas, Daniel A. Spector, Assistant United States Attorneys; Loretta E. Lynch, United States Attorney for the Eastern District of New York, *on the brief*), Brooklyn, N.Y.

Appeal from the United States District Court for the Eastern District of New York (Irizarry, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be and it hereby is **AFFIRMED**.

Defendant-Appellant Thomas Qualls appeals from the judgment of conviction and sentence entered on June 17, 2014, in the United States District Court for the Eastern District of New York (Irizarry, *J.*). A jury convicted Defendant in absentia on sixteen counts, including mail and wire fraud, conspiracy to commit fraud, and obstruction of justice after his jury trial (the "fraud convictions"). Following his flight and recapture, Defendant pleaded guilty to one count of failure to appear (the "bail jumping conviction"). The cases were consolidated, and the district court sentenced Qualls principally to 210 months' imprisonment, comprising sentences of 150 months' imprisonment on the fraud convictions, to run consecutively with his sentence of 60 months' imprisonment on the bail jumping conviction. On appeal, Qualls argues that (1) admission of testimony during his trial pertaining to third party foreign business records violated his rights under the Confrontation Clause, and (2) his sentence is procedurally and substantively unreasonable. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

As an initial matter, the government proposes that, under the fugitive disentitlement doctrine, we should decline to entertain Defendant's challenge to the fraud convictions because Defendant fled at the conclusion of his trial and fought extradition after he was reapprehended six months later, thereby delaying the present appeal by more than three years. "Under the 'fugitive disentitlement doctrine,' a court has 'discretion to refuse to rule on the merits of a defendant's postconviction claims of trial error when the defendant has fled from justice.'" *United States v. Morgan*, 254 F.3d 424, 426 (2d Cir. 2001) (quoting *United States v. Bravo*, 10 F.3d 79, 83 (2d Cir. 1993)). Appellate application of the doctrine requires that "a sufficient nexus exists between the defendant's fugitive status and the appellate proceedings." *Id.* at 427 (citing *Ortega-Rodriguez v. United States*, 507 U.S. 234, 249 (1993)). For instance, preclusion of a postconviction assertion of trial error may be warranted "in some instances" where "a long escape . . . so delay[s] the onset of appellate proceedings that the Government would be prejudiced in locating witnesses and presenting evidence at retrial after a successful appeal." *Ortega-Rodriguez*, 507 U.S. at 249. Here, the government has suggested a few potential obstacles it might encounter if it were required to retry this case, but has failed to assert any prejudice it would suffer as a result of Defendant's flight or the delay it engendered. Because the relevant justifications for disentitlement are weak, in this case we decline to apply the doctrine.

Prior to his trial on the fraud offenses, Defendant requested that the district court preclude the government from offering into evidence certain foreign business records from IG Markets, a London-based trading firm, absent a live witness to authenticate the documents. The district court denied the request, holding that the certification executed by an IG Markets employee was sufficient to authenticate the records under 18 U.S.C. § 3505. *United States v. Qualls*, 553 F. Supp. 2d 241, 246 (E.D.N.Y. 2008). At trial, the certification was not offered into evidence, nor was it described for or viewed by the jury. On appeal, Defendant nonetheless asserts that his Sixth Amendment rights under the Confrontation Clause were violated when the government elicited testimony at trial from its fraud analyst confirming that IG Markets had sent the government "a business-records certification." App'x at 66.

2

"We review alleged violations of the Confrontation Clause *de novo*, subject to harmless error analysis." *United States v. Jass*, 569 F.3d 47, 55 (2d Cir. 2009) (internal quotation marks and alterations omitted). The Supreme Court has explained that, pursuant to the Confrontation Clause, "an out-of-court statement [that] is testimonial in nature . . . may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2713 (2011). An out-of-court statement is testimonial "when it is made with the primary purpose of creating a record for use at a later criminal trial." *United States v. James*, 712 F.3d 79, 96 (2d Cir. 2013). "Business and public records are generally admissible absent confrontation, not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Id.* at 90 (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009)).

Fatal to Defendant's Confrontation Clause argument is his failure to identify any out-of-court testimonial statement that the government introduced against him at trial. On appeal, Defendant does not, for instance, question the authenticity of the foreign business records, nor does he assert that the records were themselves testimonial. *Cf. United States v. Yeley-Davis*, 632 F.3d 673, 678 (10th Cir. 2011); *United States v. Ali*, 616 F.3d 745, 752 (8th Cir. 2010). Defendant also cannot argue that the business records certification was actually offered into evidence. *Cf. United States v. Anekwu*, 695 F.3d 967, 977 (9th Cir. 2012) (holding that the district court did not plainly err by admitting certificates of authentication for foreign public and business records admitted pursuant to 18 U.S.C. § 3505).[1] While Defendant insists that the government nonetheless introduced the certification through the surrogate testimony of its fraud analyst, this contention is belied by the trial record. The fraud analyst testified from personal knowledge that he had received "a business-records certification" from IG Markets, App'x at 66, but he conveyed none of the content contained in that certification to the jury. *Cf. Melendez-Diaz*, 557 U.S. at 311 n.1 ("[I]t is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. . . . It is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony is introduced must (if the defendant objects) be introduced live.").

Even assuming arguendo that the certification implicated the Confrontation Clause and that the fleeting reference to its existence was functionally equivalent to introducing it as evidence against Defendant at trial, we readily conclude that such error would be harmless.

---

[1] For this reason, we need not reach the issue of whether the Confrontation Clause would be implicated by admitting certifications prepared by records custodians solely to authenticate or lay the foundation for otherwise admissible business records. *Cf. Melendez-Diaz*, 557 U.S. at 322–23 (explaining that "[a] clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not . . . *create* a record for the sole purpose of providing evidence against a defendant," nor could "the prosecution . . . admit into evidence a clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it").

Given the overwhelming evidence of Defendant's guilt and the meager probability that the jury would have discerned any significance from the government's passing reference to a business records certification, we are "satisfied . . . beyond a reasonable doubt that the error complained of . . . did not contribute to the verdict obtained." *James*, 712 F.3d at 99 (internal quotation marks omitted).

Defendant next argues that the district court violated his rights under the Ex Post Facto clause when, pursuant to the one-book rule, it employed the 2013 Sentencing Guidelines Manual to determine the appropriate sentence for not only his bail jumping conviction, but his earlier fraud convictions as well. In *United States v. Kumar*, this Court held "that the one-book rule set forth in § 1B1.11(b)(3) does not violate the *Ex Post Facto* clause when applied to the sentencing of offenses committed both before and after the publication of a revised version of the Guidelines." 617 F.3d 612, 628 (2d Cir. 2010). Despite Defendant's arguments to the contrary, nothing in *Peugh v. United States*, 133 S. Ct. 2072 (2013), contradicts that holding. *Compare Peugh*, 133 S. Ct. at 2087 (holding that "retrospective application of a higher Guidelines range violates the *Ex Post Facto* Clause."), *with Kumar*, 617 F.3d at 626 n.12 (proceeding "on the assumption that the *Ex Post Facto* clause applies to the advisory Guidelines."). It is well established that we are "bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court." *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004).

Defendant argues that the district court also committed procedural error by denying him an evidentiary hearing pursuant to *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978), to determine whether he suffered from diminished capacity as a result of his delusional disorder at the time he committed the offenses underlying his fraud convictions. It is well established that "[t]he district court is not required, by either the Due Process Clause or the federal Sentencing Guidelines, to hold a full-blown evidentiary hearing in resolving sentencing disputes. All that is required is that the court afford the defendant some opportunity to rebut the Government's allegations." *United States v. Phillips*, 431 F.3d 86, 93 (2d Cir. 2005) (quoting *United States v. Slevin*, 106 F.3d 1086, 1091 (2d Cir. 1996)). Here, the district court denied Defendant's request for a *Fatico* hearing on the basis that it had already had the opportunity to observe Defendant in court for over a year and had considered extensive written submissions from Defendant's family members, experts, and counsel regarding Defendant's mental status. The district court did not abuse its discretion, *see United States v. Bonventre*, 720 F.3d 126, 128 (2d Cir. 2013), by deeming it unnecessary to hear live testimony from Defendant's family members and a third psychological expert. *See also United States v. Morrison*, 153 F.3d 34, 54 (2d Cir. 1998) ("A criminal defendant has no right to demand an evidentiary hearing to present his own witnesses at sentencing.").

Defendant's argument that he was entitled to a downward departure pursuant to U.S.S.G. § 5K2.13 to reflect his diminished capacity is similarly unavailing. "'[A] refusal to downwardly depart is generally not appealable,' and . . . review of such a denial will be available only 'when a sentencing court misapprehended the scope of its authority to depart or the sentence was otherwise illegal.'" *United States v. Stinson*, 465 F.3d 113, 114 (2d Cir. 2006) (quoting *United States v. Valdez*, 426 F.3d 178, 184 (2d Cir. 2005)). Defendant provides no basis for his conclusory assertion that the district court misunderstood its authority to depart—a contention we

4

reject upon independent review. At a minimum, the district court correctly recognized that it was not permitted to depart downward under Section 5K2.13 if "the defendant's criminal history indicates a need to incarcerate the defendant to protect the public." U.S.S.G. § 5K2.13. Here, the district court found such a need present, based on Defendant's involvement in several prior fraudulent schemes and his continued perpetration of fraudulent acts after absconding at the conclusion of his trial. *See United States v. Qualls*, 25 F. Supp. 3d 248, 259 (E.D.N.Y. 2014).

"In reviewing a district court's decision not to downwardly depart, we review for clear error the factual findings from which such a decision arose." *Valdez*, 426 F.3d at 186. Defendant argues that the district court clearly erred in concluding that Defendant had not established a causal link between the delusional disorder from which he suffered at sentencing and the crimes committed almost a decade earlier, because all the doctors—including two government experts—agreed that he was mentally ill around the time of his sentencing. Defendant's argument misses the mark because, by its express terms, Section 5K2.13 excludes from consideration for downward departure cases where the defendant's significantly reduced mental capacity did not "*contribute[ ] substantially* to the commission of the offense." U.S.S.G. § 5K2.13 (emphasis added). The district court recognized that Defendant suffered from a mental illness at the time of sentencing, and noted that it took this fact into account in fashioning an appropriate sentence. It nonetheless concluded that a downward departure was not warranted under Section 5K2.13 because Defendant had not established a causal link between his current mental illness and his prior fraud offenses. *See Qualls*, 25 F. Supp. 3d at 259. The district court's determination in this regard was consistent with the opinions offered by the two government experts, who reported that Defendant's delusions were localized and thematic—centering around his imagined involvement in the independent endeavor of asset recovery. Furthermore, this Court has held that "[i]n determining whether a downward departure is warranted on the basis of diminished capacity, a district court is not required to accept evidence concerning a defendant's mental and emotional states offered by defendant's own expert, but rather may rely on its own assessment of defendant's mental state based upon its observations, even when they conflict with those of the expert." *Valdez*, 426 F.3d at 186.

Finally, Defendant asserts that the district court failed to adequately consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). "[T]he requirement that a sentencing judge consider an 18 U.S.C. § 3553(a) factor is *not* synonymous with a requirement [that] the factor be given determinative or dispositive weight in the particular case." *United States v. Florez*, 447 F.3d 145, 157 (2d Cir. 2006) (internal quotation marks omitted) (emphasis in original). At the sentencing hearing, the district court explicitly considered the disparity between Defendant's sentence and the sentences imposed on other white-collar defendants nationwide, but determined that such disparities were not unwarranted under the circumstances. In distinguishing Defendant from other offenders who had been sentenced more leniently, the district court emphasized: (1) Defendant's repeated pattern of engaging in fraudulent enterprises over the course of a decade; (2) his Category III criminal history; (3) his major role in organizing and operating the fraudulent scheme; (4) his repeated acts of obstruction; (5) his victimization of individuals most harmed by financial loss; and (6) his particular need for incapacitation and specific deterrence given his continued criminal activity even after criminal proceedings against him were well under way. The district court therefore acted within its broad discretion in finding

that the seriousness of Defendant's crimes required a more substantial sentence than the nationwide averages for the crimes of which he was convicted.

We have considered the remainder of Defendant's arguments and find them to be without merit. Accordingly, the judgment of the district court is hereby AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk