UNITED STATES of America

v.

**Carl H. CANTER, Carl D'Elia, Michael Marcus, Scott Allen Schuster, Michael Zambouros, Defendants.**

**No. 03 CR. 887(VM).**

United States District Court,
S.D. New York.

Oct. 5, 2004.

George R. Goltzer, Goltzer and Adler, Kenneth A. Paul, New York City, John F. Lauro, Tampa, FL, for Defendants.

Marc A. Weinstein, Assistant United States Attorney, Mary Jo White, United States Attorney, New York City, for Plaintiff.

## *DECISION AND ORDER*

### I. *BACKGROUND* [1]

MARRERO, District Judge.

Defendants in this case have been charged in a two-count indictment involving conspiracy to commit securities fraud, wire fraud, and commercial bribery; and with the substantive offense of securities fraud. Trial on this matter had been scheduled to commence on October 18, 2004 but the defendants have requested an adjournment. Defendant Michael Zambouros ("Zambouros") has filed two pretrial motions. First, Zambouros seeks expedited disclosure from the Government of exculpatory and impeachment evidence. Second, Zambouros requests a hearing to determine whether evidence of a polygraph examination he underwent can be admitted at his trial. The Government opposes both motions. For the reasons set forth below, Zambouros's motions are denied.

### II. *DISCUSSION*

#### A. *EXPEDITED DISCLOSURE OF EXCULPATORY/IMPEACHMENT EVIDENCE*

■ Zambouros requests that the Government produce any and all exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104

---

1. The factual summary described herein derives from the following documents: (1) Indictment, *United States v. Canter*, 03 Cr. 887 ("Indictment"); (2) Memorandum in support of Defendant Zambouros's Motion for Disclosure of Exculpatory and Impeachment Evidence, dated July 13, 2004 ("Def.Discl.Memo."); (3) Memorandum of Law in support of Defendant Zambouros' Motion Requesting Hearing on Admissibility of Polygraph Evidence, dated July 13, 2004; and (4) Government's Memorandum of Law in Opposition, dated Aug. 5, 2004 ("Gov't Memo.").

(1972), at least 30 days prior to the start of trial. While Zambouros concedes that there is "no clear rule regarding the timing of the disclosure," he requests disclosure of this material so that he can "adequately prepare for cross-examination of key Government witnesses, as well as to develop important themes relating to possible exculpatory material." (Def. Discl. Memo. at 9.)

The Court discerns no basis upon which to require the Government to disclose this material within the time frame Zambouros requests. The Government has specifically acknowledged its ongoing obligation to provide Zambouros with any materials in its possession relating to *Brady, Giglio,* and the Jencks Act, *see* 18 U.S.C. § 3500. (*See* Gov't Memo. at 22–23.) The Court accepts the Government's good-faith representation that it will comply with this obligation. Zambouros does not argue that the Government's full compliance is in doubt. *See United States v. Al–Marri,* 230 F.Supp.2d 535, 542 (S.D.N.Y.2002) ("[t]his Court sees no basis for an order directing disclosure of such material at this time. The Court also accepts the Government's acknowledgment and reaffirmation of its continuing obligation under *Brady* to provide timely disclosure in the event that exculpatory information comes to light."); *United States v. Rueb,* No. 00 Cr. 091, 2001 WL 96177, at *6 (S.D.N.Y. Feb.5, 2001); *United States v. Perez,* 940 F.Supp. 540, 553 (S.D.N.Y.1996).

■ The Second Circuit requires only that impeachment material be disclosed "in time for its effective use at trial." *United States v. Coppa (In re United States),* 267 F.3d 132, 142 (2d Cir.2001). It has been the practice of this Court and of other courts in this district to require that the Government produce these materials a few days before the start of trial, usually on the Friday before a trial scheduled to start

on a Monday. *See, e.g., United States v. Santiago,* 174 F.Supp.2d 16, 40–41 (S.D.N.Y.2001); *Perez,* 940 F.Supp. at 553. Only where the complexity of the case is exceptional and the amount of evidentiary materials it produces is extremely voluminous may the Court order the Government to disclose such materials well in advance of trial. *Cf. United States v. Falkowitz,* 214 F.Supp.2d 365, 392–93 (S.D.N.Y.2002) (ordering that the Government produce its exhibit list one week prior to trial and materials relating to Federal Rule of Evidence 404(b) two weeks prior to trial in light of the nature and extent of materials at issue).

In this case, Zambouros provides only a blanket assertion that 30 days would allow him adequate preparation for trial, without setting forth any particular reason as to why the materials at issue are uniquely complex or voluminous so as to indicate that additional time is necessary. The Court does not find that the materials in this case demand expedited disclosure. The Government has acknowledged its obligation to produce all exculpatory and impeachment materials prior to trial and has stated its intent to do so no later than Friday, October 15, 2004. Accordingly, Zambouros's request to compel production of these materials at least 30 days prior to trial is denied.

## B. *POLYGRAPH EVIDENCE*

■ Zambouros requests a hearing on the admissibility of the results of a polygraph examination he underwent on November 24, 2003, after the Government brought the charges in this case. Zambouros seeks to admit the expert testimony of the polygraph examiner, who would testify that Zambouros answered certain questions relating to the pending charges truthfully. Zambouros never informed the Government of his intention to submit to

the examination, and informed the Government of the examination only after receiving the results.

Zambouros contends that the Second Circuit has not addressed the admissibility of polygraph evidence since the United States Supreme Court declared that Federal Rule of Evidence 702 ("Rule 702") governs the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587–88, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Rule 702 provides that expert testimony based on scientific knowledge is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue," provided that the testimony is "based upon sufficient facts or data" and "is the product of reliable principles and methods." Fed.R.Evid. 702. Zambouros asserts that a hearing is required to establish that his polygraph examination would be admissible under the *Daubert* factors.[2] In this regard, Zambouros places heavy reliance on *United States v. Crumby*, 895 F.Supp. 1354 (D.Ariz.1995), and on *United States v. Galbreth*, 908 F.Supp. 877 (D.N.M.1995), which held the particular polygraph evidence at issue admissible after applying *Daubert*.

The Court finds Zambouros's arguments unpersuasive. While the Second Circuit has reserved deciding whether polygraph technology is sufficiently reliable evidence to be admissible under Rule 702 in light of *Daubert, see United States v. Messina*, 131 F.3d 36, 42 (2d Cir.1997), both the Second Circuit and its district courts have consistently expressed serious doubt as to the reliability of such evidence, even after

*Daubert. See, e.g., United States v. Duverge Perez*, 295 F.3d 249, 253–54 (2d Cir. 2002) (finding no abuse of discretion from the district court's refusal to admit polygraph evidence in connection with the defendant's sentencing); *United States v. Ruggiero*, 100 F.3d 284, 292 (2d Cir.1996) (dismissing the significance of polygraph results that might corroborate a defendant's testimony because of their "questionable accuracy"); *Monsanto v. United States*, Nos. 97 Civ. 4700, S 87 Cr. 555, 2000 WL 1206744, *4 (S.D.N.Y. Aug.24, 2000) ("[P]olygraph examinations are considered unreliable and are inadmissible in court."); *United States v. Bellomo*, 944 F.Supp. 1160, 1164 (S.D.N.Y.1996) ("[P]olygraph evidence never has been admitted in a federal trial in this Circuit, even in the three years since *Daubert* ...."); *United States v. Black*, 831 F.Supp. 120, 123 (E.D.N.Y.1993) (holding that, even after *Daubert*, "[t]he polygraph test is simply not sufficiently reliable to be admissible").

Moreover, five years after *Daubert*, the United States Supreme Court stated that "there is simply no consensus that polygraph evidence is reliable" and that "the scientific community remains extremely polarized about the reliability of polygraph techniques." *United States v. Scheffer*, 523 U.S. 303, 309, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). In *Scheffer*, the Supreme Court upheld the constitutionality of Military Rule of Evidence 707, which categorically bans the admission of polygraph evidence in court-martial proceedings. In so holding, the *Scheffer* Court

---

**2.** In *Daubert*, the Supreme Court suggested five non-exclusive factors to assist a court in determining the admissibility of expert testimony: 1) whether the theory or technique can be and has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error; 4) the existence and maintenance of standards controlling the technique's operation; and 5) the degree of general acceptance within the relevant scientific community. *See Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786.

noted that federal and state courts continue to express doubt as to the reliability of polygraph evidence and found that "there is simply no way to know in a particular case whether a polygraph examiner's conclusion is accurate, because certain doubts and uncertainties plague even the best polygraph exams." *Id.* at 312, 118 S.Ct. 1261. The Supreme Court held the rule of evidence banning polygraph evidence did not violate a criminal defendant's constitutional right to put forth a defense. *See id.* at 309, 118 S.Ct. 1261.

While the Court is mindful that *Scheffer* involved a challenge to a military rule of evidence, the Court finds the *Scheffer* Court's rationale and discussion of the reliability of polygraph evidence no less germane or compelling. For this reason, Zambouros's arguments relying on *Crumby* and *Galbreth*, both pre-*Scheffer* decisions not binding upon this Court, are unpersuasive. Indeed, Zambouros does not cite to any post-*Scheffer* federal court ruling that has admitted polygraph evidence.

Furthermore, even if the Court were to entertain the notion that in some circumstances polygraph evidence may be admissible under *Daubert*, the particular circumstances of Zambouros's polygraph examination cast serious doubt on the reliability of this evidence, and as such, the probative value would be minimal at best. Zambouoros's polygraph examination consisted of three questions: 1) Did you agree with Carl Canter, Howard Zelin, and others to inflate artificially the price of Concap stock? 2) Did you agree with Carl Canter, Howard Zelin, and others to pay secret bribes to brokers to inflate artificially the price of Concap stock? 3) Did you participate in a scheme to manipulate the price of Concap stock? Zambouros answered each question in the negative and the polygraph examiner opined that based on the polygraph charts there was no deception when Zambouros gave these answers.

As discussed above, Zambouros never notified the Government of the polygraph examination, and thus, it could not witness the examination and ensure the integrity of the procedure. Moreover, with the Government unaware of the examination at the time that it was performed, Zambouros essentially had nothing to lose—had he failed the examination, it is highly improbable that he would have revealed that result to the Government. Under these circumstances, the reliability of Zambouros's polygraph examination is suspect, and as such, the testimony of the polygraph examiner is inadmissible as a matter of law. *See United States v. Saldarriaga,* 179 F.R.D. 140, 140 (S.D.N.Y.1998) (holding that evidence of a polygraph examination is inadmissible where the Government was not notified of the examination).

Furthermore, the Court agrees with the Government that the particular questions, as posed, are not probative of Zambouros's guilt or innocence of the charges brought against him. For example, the first question asks whether Zambouros "agree[d] with Carl Canter, Howard Zelin, and others" to artificially inflate Concap stock. As phrased, Zambouros could answer truthfully by responding in the negative while still being guilty of the conspiracy charge if say, he conspired only with Canter and no one else, or only with individuals other than Carl Canter and Howard Zelin. The second question suffers from the same infirmity. Thus, the results of Zambouros's polygraph examination will not "assist the trier of fact" in ultimately determining Zambouros's guilt or innocence. Fed.R.Evid. 702; *see also United States v. D'Angelo,* No. 02 Cr. 399, 2004 WL 315237, at *27 (E.D.N.Y. Feb.18, 2004) (finding polygraph evidence inadmis-

sible where the witness had been instructed to answer only "yes" or "no" to very specific questions and noting that framing the questions and the response in this way "virtually compel[s] incomplete or misleading answers"); *United States v. Bellomo,* 944 F.Supp. 1160, 1164 (S.D.N.Y.1996) ("The validity of polygraph evidence is highly dependant on the questions put to the subject by the examiner.... In examining polygraph evidence, therefore, courts must examine the questions posed with great care.").

Accordingly, for this additional reason, the Court finds that Zambouros's polygraph examination bears minimal probative value. In light of the strong likelihood that a jury would place great weight on this type of evidence, its minimal probative value in this case is significantly outweighed by its highly prejudicial effect. *See* Fed.R.Evid. 403. Zambouros's motion for a hearing on the admissibility of the polygraph examination he underwent in connection with the charges brought against him in this case is denied.

### III.  *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that the motion of defendant Michael Zambouros ("Zambouros") to compel expedited disclosure of exculpatory and impeachment evidence is DENIED; and it is further

**ORDERED** that Zambouros's motion requesting a hearing on the admissibility of polygraph examination in this case is DENIED.

**SO ORDERED.**