*United States v. Razzouk*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of October, two thousand twenty.

PRESENT:

> JOHN M. WALKER, JR.,
> SUSAN L. CARNEY,
> > *Circuit Judges*,
> JOHN G. KOELTL,
> > *District Judge.*\*

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                          No. 18-1395

SASSINE RAZZOUK,

> *Defendant - Appellant*.

---

FOR DEFENDANT-APPELLANT:          STEVE ZISSOU, ESQ., Bayside, NY.

---

\* Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

FOR APPELLEE: FRANK TURNER BUFORD (David C. James, Claire S. Kedeshian, *on the brief*), *for* Richard P. Donoghue, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Ross, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on April 25, 2018, is **AFFIRMED** except insofar as it orders restitution; the restitution order is vacated and the cause remanded pursuant to an Opinion filed concurrently with this Order.

In 2011, acting pursuant to his agreement with the government (the "Cooperation Agreement"), Defendant-Appellant Sassine Razzouk entered a plea of guilty to one count of bribery in violation of 18 U.S.C. § 666(a)(1)(B) and three counts of tax evasion in violation of 26 U.S.C. § 7201. The prosecution and plea stemmed from a scheme that Razzouk (as he admitted) engaged in from 2007 until 2011: as a manager at Consolidated Edison ("Con Edison"), Razzouk accepted payments from Rodolfo Quiambao in return for facilitating Con Edison's direction of work and overpayments to Quiambao's contracting firm, Rudell & Associates, Inc. ("Rudell").

In 2015, while still subject to the Cooperation Agreement and before his sentencing, Razzouk met with Quiambao, disclosed his cooperation with the government, and proposed that he (Razzouk) testify falsely at Quiambao's upcoming trial on related bribery charges. Razzouk's plan was that he would swear that Quiambao's payments to Razzouk were for overseas consulting work and not bribes related to his manipulations of Con Edison's contracting process. Unbeknownst to Razzouk, the conversation was recorded by Quiambao, who then provided the recording to the government. Thereafter, the government declined to recommend to the district court that Razzouk receive a three-point reduction for "acceptance of responsibility" under the U.S. Sentencing Guidelines § 3E1.1 or to submit a letter under Guideline § 5K1.1 in which it would recommend that Razzouk receive a

sentence below his Guidelines sentence, contrary to the contingent understanding set forth in the Cooperation Agreement.

On March 30, 2018, just four days before his sentencing proceedings and nearly seven years after entering his guilty plea, Razzouk unsuccessfully sought the district court's leave to withdraw his plea. In April 2018, the district court entered a judgment convicting Razzouk of the charged counts of bribery and tax evasion, and sentencing him primarily to 78 months' incarceration and ordering him to make two restitution payments: first, of approximately $6.9 million, to Con Edison, for losses calculated by the court to have been incurred by the company as a result of Razzouk's crime, and second, approximately $2 million to the Internal Revenue Service ("IRS") in unpaid taxes and interest. Razzouk timely appealed.

On appeal, Razzouk challenges the following rulings of the district court: (1) its denial of his motion to withdraw his plea; (2) its decision not to require the government to comply with sentencing-related obligations stated in the Cooperation Agreement; (3) its decision at sentencing not to conduct a full evidentiary hearing on certain matters; (4) its factual findings that he accepted payments from Quiambao and Rudell in excess of $3.5 million and that he did not accept responsibility for his crimes; (5) its order that he pay restitution to Con Edison; and (6) its order that he pay restitution to the IRS. We address issues (1)–(4) here, and address the remaining two issues in an Opinion published concurrently with this Order. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

1. *Motion to Withdraw Guilty Plea*

The Federal Rules of Criminal Procedure allow a defendant to "withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence[,] if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d). Razzouk argues that the district court erred by denying his motion to withdraw his guilty plea to the bribery charge. He asserts that he showed a "fair and just reason" for his request because, in his view, his 2011 plea allocution provided an inadequate factual basis for

3

his plea. *See* Fed. R. Crim. P. 11(b)(3) (requiring district court to "determine that there is a factual basis" for a guilty plea before accepting plea). We "review for an abuse of discretion [the] district court's decision that a defendant's factual admissions support conviction on the charge to which he has pleaded guilty." *United States v. Adams*, 448 F.3d 492, 498 (2d Cir. 2006).[1]

To support a conviction under the bribery statute, the record must establish that the defendant

> corruptly solicit[ed] or demand[ed] for the benefit of any person, or accept[ed] or agree[ed] to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more.

18 U.S.C. § 666(a)(1)(B). Razzouk argues that the record inadequately supports the statute's corrupt intent element.

We disagree. In his plea allocution, Razzouk stated that he "accepted United State[s] currency from Rudel[l] & Associate[s]" and that he received "payments." App'x 51. He further acknowledged that he "received these payments in part with the intent to influence with respect to awarding jobs [sic] to Rudel[l] in excess of $5,000." *Id.* He further described his quid pro quo arrangement, stating that he "provided benefit" to Rudell including, "among other things," "additional Con Edison work, assisting them with bids and approving payment to Rudel[l] & Associates in contracts with Con Edison for things I was not entitled to."[2] *Id.* On abuse of discretion review, we identify no error in the district court's ruling that

---

[1] Unless otherwise noted, our Summary Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.
[2] Razzouk maintains that a phrase he used in the allocution—"for things I was not entitled to"—is too vague to provide a basis for determining that he accepted "anything of value," as required by § 666(a)(1)(B). We are not persuaded: his statements regarding his receipt of "United State[s] currency" and "payments" were sufficient to meet the "anything of value" element set forth in that statutory provision.

4

this allocution provided an adequate basis for the requisite finding of corrupt intent. Razzouk therefore gave no "fair and just reason" for withdrawing his guilty plea.

2. *Alleged Government Breach of Cooperation Agreement*

Razzouk next submits that, at sentencing, the government breached the Cooperation Agreement by opposing a three-level downward adjustment of his offense level in recognition of his acceptance of responsibility. He urges that, as a result, he is entitled to resentencing. In response, the government maintains that its obligations under the Cooperation Agreement were extinguished in 2015 when Razzouk proposed to Quiambao that he provide false testimony in Quiambao's prosecution, and when by his actions he revealed to Quiambao his prior cooperation with the government, a revelation that contravened the Cooperation Agreement.

The district court adopted the government's view, describing Razzouk's actions as a "determination to commit and suborn perjury." App'x 231. We review the interpretation of a plea agreement "de novo and in accordance with principles of contract law." *United States v. Riera*, 298 F.3d 128, 133 (2d Cir. 2002).

Paragraph 3(c) of the Cooperation Agreement obligates Razzouk "not to reveal his cooperation, or any information derived therefrom, to any third party without prior consent of the Office." Gov't App'x 4. Paragraph 8 then provides in relevant part:

> Should it be judged by the Office that the defendant has failed to cooperate fully, has intentionally given false, misleading or incomplete information or testimony, has committed or attempted to commit any further crimes, or has otherwise violated any provision of this agreement, *the defendant will not be released from his plea of guilty but this Office will be released from its obligations under this agreement, including (a) not to oppose a downward adjustment of three levels for acceptance of responsibility* . . . .

*Id.* at 7 (emphasis added).

We conclude that Razzouk breached the Cooperation Agreement by "reveal[ing] his cooperation or any information derived therefrom" to Quiambao without prior consent of the Office, and thereby altered his relationship with the government as described in paragraph 8. *Id.* at 4, 7. In their 2015 recorded conversation, for example, Razzouk told

5

Quiambao, "I already met with them over maybe ten times, okay? What do they want? They want to me say something that was—bring you down." Gov. App'x 27. Quiambao reasonably could have inferred Razzouk's cooperation from this statement. Razzouk also indicated that he was cooperating with the government to testify at Quiambao's trial by stating, for example, "[the prosecutor is] back and since the trial is going to be in March, so [the prosecutors are] going to call me in January so I can go and prep for the trial." *Id.* at 34. Indeed, it is difficult to interpret these statements other than as revealing to Quiambao Razzouk's ongoing cooperation with the government and thus contravening paragraph 3(c). In accordance with the Cooperation Agreement's paragraph 8, then, these acts released the government from its obligation not to oppose a three-level downward adjustment for acceptance of responsibility.[3]

Razzouk argues further that, setting aside the Cooperation Agreement's written terms, the government improperly reneged on an oral promise made to him after the 2015 meeting that, notwithstanding his breach, the government would not oppose the three-level adjustment. He urges that the government thus revived the Cooperation Agreement in this regard.

Razzouk cites no authority in support of this position and we are aware of none. Without a "specific agreement, the decision by the prosecutor to forego [sic] a downward departure motion in a particular case is not subject to judicial review at all." *United States v. Rexach*, 896 F.2d 710, 713 (2d Cir. 1990). We conclude therefore that the government was

---

[3] Additionally, the district court could have found by a preponderance of the evidence that Razzouk breached the Cooperation Agreement on a different ground: Razzouk's actions could easily be deemed a "fail[ure] to cooperate fully" under paragraph 8 of the Cooperation Agreement. Gov. App'x 7. Even if Razzouk's statements could be seen as falling short of a complete revelation that he was cooperating, the failure "to cooperate fully" provides an adequate basis for finding a breach by Razzouk that relieved the government of its undertaking. Moreover, as the district court concluded, Razzouk attempted to suborn perjury by Quiambao, which violated the provision of the Cooperation Agreement that prohibited Razzouk from attempting to commit any further crimes.

6

relieved of its obligations regarding Razzouk's sentencing adjustments by operation of paragraph 8 of the Cooperation Agreement. Resentencing is not required.[4]

### 3. *Denial of Request for Evidentiary Hearing*

Razzouk next advances the theory that the district court erred by declining to hold a full evidentiary hearing regarding Razzouk's alleged breach of the Cooperation Agreement. On that ground, he seeks a remand. In response, the government correctly notes that, during the sentencing proceedings, Razzouk never requested a hearing regarding his alleged breach of the Cooperation Agreement. Instead, on the day of sentencing, Razzouk sought a hearing that would enable him to present evidence of his close relationship with Quiambao and about their work together abroad. App'x 192-95. The district court allowed Razzouk to testify in that regard.

District courts have "broad discretion as to what types of procedure are needed at a sentencing proceeding for determination of relevant disputed facts. The discretion of a sentencing court is similarly broad either as to the kind of information it may consider, or the source from which it may come. We review such determinations for an abuse of discretion." *United States v. Duverge Perez*, 295 F.3d 249, 254 (2d Cir. 2002).

We discern no abuse of discretion here. His request was framed other than as Razzouk presents it on appeal: not a "full evidentiary hearing," but a request—which was granted—to present his testimony about his relationship with Quiambao and their work abroad. (Indeed, having heard this testimony, the court later found it not credible.) Razzouk did not request the hearing that he now argues he should have had. We therefore reject his argument.

---

[4] We need not address Razzouk's allegations of the government's bad faith, as they were raised for the first time in his reply brief. *Bolmer v. Oliveira*, 594 F.3d 134, 145 (2d Cir. 2010) ("We decline to consider this argument as it was raised for the first time in Oliveira's reply brief."). We note, however, that in light of his own actions Razzouk is ill-placed to argue bad faith, and in any event the record lends little credence to his charges against the government.

4. *Sentencing for Bribery*

Also with regard to his sentencing, Razzouk contests (1) the district court's calculation that the value of the payments made to him exceeded $3.5 million, resulting in an 18-level increase to his offense level under Guidelines §§ 2B1.1 and 2C1.1(b)(2), and (2) the court's rejection (regardless of the government's position) of any downward adjustment for acceptance of responsibility under Guideline § 3E1.1.

a.      *18-Level Enhancement.* The Court reviews *de novo* a district court's application of the Guidelines to the facts. *United States v. Lewis*, 93 F.3d 1075, 1079 (2d Cir. 1996). Razzouk challenges the 18-level enhancement, purporting to identify error in the district court's finding that the loss to Con Edison exceeded $3.5 million based on two accounting firms' calculations. This argument is based on a misunderstanding, however, about the operation of the Guidelines. The Guidelines allow any of the following to be used as the basis for the sentencing calculation for bribery: the "value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense, whichever is greatest." U.S.S.G. § 2C1.1(b)(2). The district court based the 18-level enhancement on the total of "Quiambao's bribery payments to Razzouk," App'x 227—*i.e.*, the "value of the payment[s]"—and not on the estimate of loss to Con Edison on which restitution was based. Therefore, Razzouk's arguments regarding loss amount have no purchase here.

b.      *Three-Level Downward Adjustment.* As to a three-level downward adjustment under U.S.S.G. § 3E1.1 for accepting responsibility, "[w]hether or not a defendant has accepted responsibility for a crime is a factual question. A district court's determination in this regard should not be disturbed unless it is without foundation." *United States v. Irabor*, 894 F.2d 554, 557 (2d Cir. 1990). Razzouk insists that he earned the adjustment and the district court committed clear error by rejecting it.

We are not persuaded. At sentencing, and in his objections to the presentence report, Razzouk made claims that were inconsistent with his guilty plea and with his statements at

8

proffer sessions with the government. The district court had an ample foundation for finding that Razzouk did not merit a reduction for acceptance of responsibility. It committed no clear error in its denial.

* * *

We have considered Razzouk's remaining arguments and conclude that they are without merit. The judgment of the district court is affirmed except insofar as it orders restitution; the restitution order is vacated and the cause remanded pursuant to an Opinion filed concurrently with this Order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court